IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GERALD GOFORTH,<br>　　　Plaintiff,<br><br>vs.<br><br>THE RAND GROUP, LLC and<br>RAND GROUP SOLUTIONS, LLC,<br>　　　Defendants. | §<br>§<br>§<br>§　CIVIL ACTION NO. 4:17-cv-02694<br>§　　　　JURY DEMANDED<br>§<br>§<br>§<br>§ |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Gerald Goforth, Plaintiff, files this *Complaint*, complaining of Defendants, The Rand Group, LLC and Rand Group Solutions, LLC, and would respectfully show the following:

### I. PARTIES

1.1.　Plaintiff, *Gerald Goforth* ("Goforth" or "Plaintiff"), is an individual residing in Davidsonville, Maryland.

1.2.　Defendant, *The Rand Group, LLC* ("Rand Group"), is a Texas limited liability company, whose principal place of business is in Harris County, Texas. Rand Group may be served with summons by serving its registered agent, Ron Rand, at 6575 West Loop South, Suite 700, Bellaire, Texas 77401.

1.3.　Defendant, *Rand Group Solutions, LLC* ("Rand Solutions"), is a Texas limited liability company, whose principal place of business is in Harris County, Texas. Rand Solutions may be served with summons by serving its registered agent, Ronnie Ray Rand, at 6575 West Loop South, Suite 700, Bellaire, Texas 77401.

## II. Venue

2.1.    Venue of this action is proper in this district and division because both defendants have their principle place of business in Harris, County Texas.

## III. Jurisdiction

3.1.    This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction (28 U.S.C. § 1367). Specifically, this case is brought pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, as amended, the Americans With Disabilities Act ("ADA"), 29 U.S.C. § 12101 *et seq.*, as amended, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the court's supplemental jurisdiction.

## IV. Statement of Causes of action

4.1.    Defendants Rand Group and Rand Solutions will be referred to collectively herein as "Defendants" or "Rand."  Rand Group issued Goforth's 2014 W-2, but Rand Solutions paid Goforth later in his employment. Defendants operate as an "integrated enterprise" as those terms are used in relation to the relevant employment laws at issue in this case. One or more of Defendants exercised sufficient control over Goforth's employment such that they should be considered his employer for the purposes of the statutes upon which this lawsuit is based.  Rand Group and Rand Solutions are co-employers and/or joint employers of Goforth. Accordingly, employees in Rand Group and Rand Solutions should be counted for the purposes of the damages cap under the applicable statutes.

4.2.    Rand Group is an "employer" engaged in "commerce" as those terms are defined in the FMLA.

4.3.   Rand Solutions is an "employer" engaged in "commerce" as those terms are defined in the FMLA.

4.4.   Rand Group is an "employer" as that term is defined in the ADA.

4.5.   Rand Solutions is an "employer" as that term is defined in the ADA.

4.6.   Rand Group is an "employer" as that term is defined in the ADEA.

4.7.   Rand Solutions is an "employer" as that term is defined in the ADEA.

4.8.   Rand Group is an "employer" as that term is defined in the Texas Commission on Human Rights Act ("TCHRA").

4.9.   Rand Solutions is an "employer" as that term is defined in the TCHRA.

4.10.  Rand Group hired Goforth on or about July 29, 2013, as a senior manager. Goforth signed an *Employment Agreement* which promised him an annual salary of $135,000.

4.11.  Goforth's job title was "Senior Manager" but he primarily performed programming duties out of Rand Group's Dallas office.

4.12.  Goforth billed approximately fifty to seventy hours per week during his employment with Defendants. Goforth received an excellent performance review as recently as the summer of 2015 and was never subject to any disciplinary action or put on a performance improvement plan.

4.13.  On or about May 21, 2015, Goforth began reporting to Suzie Turner ("Turner"), Vice President in charge of Rand Group's Dallas office. Turner was in her early forties.

4.14.  In the spring of 2015, Goforth learned he needed hip surgery. Goforth originally scheduled the surgery for July 2, 2015 (which would have entitled him to FMLA leave), but agreed to reschedule the surgery for October 5, 2015, at the request of a company client. Goforth

was again asked to postpone his surgery this time by Turner, but Goforth informed Turner he was unable to do so.

    4.15.   In September 2015, Rand Group began to transfer Goforth's billable work to substantially younger developers. Goforth was not given any reason for this transfer of work. There was still a substantial amount of work for Goforth to perform for his client but Rand Group transferred the work to younger, less knowledgeable developers. Goforth's bonus was determined in part by the number of billable hours he logged.

    4.16.   On October 2, 2015, three days prior to Goforth's rescheduled surgery (and triggering of his right to FMLA leave), Turner informed Goforth via telephone at approximately 4:00 p.m. EST that he was being terminated. During the call, Turner did not give a reason for the termination. Goforth was sixty-one years old at the time of his termination.

    4.17.   Goforth was replaced by someone more than ten years younger than Goforth.

    4.18.   Rand Group later notified Goforth his termination was effective on October 1, 2015, despite his having performed services for Rand Group on October 2, 2015. Goforth was not paid for his day of work on October 2, 2015.

    4.19.   Of the other approximately seven senior managers at his level at the time of his termination, Goforth was the oldest. Among this group of comparators, Goforth had the most tenure and routinely billed more hours. Goforth's termination is part of a pattern and practice of Rand Group terminating older individuals. Eric Kahn (approximately fifty years old at the time) and George Brown (approximately sixty-two years old at the time), both former Rand Group Vice Presidents, were removed in early 2015. Tom Cofer (approximately sixty-two years old at the time), an Executive Vice President and Goforth's previous supervisor, was terminated and replaced by Turner, who is substantially younger than Cofer and in her early forties at the time.

## V. FMLA Claims—Discrimination and Retaliation

5.1. Goforth incorporates the factual allegations recited above and would show Defendants' conduct constitutes violations of the FMLA in that Defendants interfered with Goforth's rights under the FMLA and retaliated against him by terminating him instead of providing him with FMLA leave. Goforth was an "eligible employee," as that phrase is defined under the FMLA, at the time of his termination.

5.2. Defendants' conduct has caused Goforth damage by way of loss of wages and benefits in the past and in the future, and other pecuniary compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

5.3. At this point, reinstatement is not feasible, though Goforth seeks it if it is found to be feasible.

5.4. Goforth also seeks liquidated damages as provided by the FMLA.

## VI. ADA Claims—Disability Discrimination

6.1. Goforth incorporates the factual allegations recited above and would show Defendants' conduct constitutes violations of the ADA in that Defendants discriminated against Goforth by transferring his billable hours and terminating him because of a disability, because they regarded him as having a disability, and/or a record of disability. Defendants failed to make a reasonable accommodation for Goforth. Disability was a motivating factor in the adverse employment actions he suffered, including the transfer of his billable hours and his termination.

6.2. Defendants' conduct has caused Goforth damage by way of loss of wages and benefits in the past and in the future, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

6.3. At this point, reinstatement is not feasible, though Goforth seeks it if it is found to be feasible.

6.4. Defendants' conduct was carried out with malice or reckless indifference to Goforth's federally-protected rights and justifies the imposition of punitive damages in an amount to be determined by the trier of fact sufficient to punish and deter Defendants from similar conduct in the future.

## VII. TCHRA Claims—Disability Discrimination

7.1. Goforth incorporates the factual allegations recited above and would show Defendants' conduct constitutes violations of the TCHRA in that Defendants discriminated against Goforth because of a disability, because they regarded him as having a disability and/or a record of disability. Defendants' discrimination included the transfer of Goforth's billable hours and his termination. Defendants failed to make a reasonable accommodation for Goforth. "Disability" was a motivating factor in the adverse employment actions Goforth suffered including the transfer of his billable work and his termination.

7.2. Defendants' conduct has caused Goforth damage by way of loss of wages and benefits in the past and in the future, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

7.3. At this point, reinstatement is not feasible, though Goforth seeks it if it is found to be feasible.

7.4. Defendants' conduct was carried out with malice or reckless indifference to Goforth's state-protected rights and as such justifies the imposition of punitive damages in an amount to be determined by the trier of fact sufficient to punish and deter Defendants from similar conduct in the future.

### VIII. ADEA Claims—Discrimination

8.1. Goforth incorporates the factual allegations recited above and would should Defendants' conduct constitutes violation of the ADEA. Defendants transferred Goforth's billable work to a younger employee and terminated Goforth because of his age.

8.2. Defendants' discriminatory conduct has caused Goforth damage by way of loss of wages and benefits in the past and in the future, and other pecuniary compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

8.3. Goforth also seeks liquidated damages as provided by the ADEA.

8.4. At this point, reinstatement is not feasible, though Goforth seeks it if it is found to be feasible.

## IX. TCHRA Claims—Age Discrimination

9.1.    Goforth incorporates the factual allegations recited above and would should Defendants' conduct constitutes violations of the TCHRA. Defendants transferred Goforth's billable work to a younger employee and terminated Goforth because of his age. Goforth's age was a motivating factor in Defendants' decision to transfer Goforth's billable work to a younger employee and terminate Goforth.

9.2.    Defendants' discriminatory conduct has caused Goforth damage by way of loss of wages and benefits in the past and in the future, mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

9.3.    At this point, reinstatement is not feasible, though Goforth seeks it if it is found to be feasible.

9.4.    Defendants' conduct was committed with malice or reckless indifference to Goforth's state-protected rights and as such justifies an award of punitive damages.

## X. Breach of Contract

10.1.    Goforth incorporates the factual allegations recited above and would show that Defendants are liable to Goforth for breach of contract. Rand Group has failed to comply with the terms of the agreement with Goforth to pay him, a result of which has caused Goforth damages. Rand Solutions has failed to comply with an agreement to pay Goforth his salary to the extent Rand Solutions assumed the obligation to pay him at the end of his employment.

10.2.    Defendants are liable for breach of contract for failing to pay Goforth for the last day he worked for Defendants.

10.3. Defendants' breach of contract has caused Goforth damages.

10.4. All conditions precedent to recovery by Goforth under the agreements with Defendants have been performed or have occurred.

10.5. In the alternative, Goforth is entitled to recover under the doctrine of promissory estoppel and/or quantum meruit or under the doctrine of substantial performance.

## XI. Attorneys' Fees

11.1. Defendants' refusal to abide by their statutory obligations to Goforth has made it necessary for Goforth to employ the undersigned attorneys to file this lawsuit. As such, Goforth requests the court award a reasonable fee, for his attorneys' services rendered and to be rendered herein, as provided for by the ADEA, ADA, and the TCHRA, as well as expenses and court costs, both at the trial court level and in the event of subsequent appeals, including to the Supreme Court.

11.2. Defendants' refusal to abide by their contractual obligations has made it necessary for Goforth to employ the undersigned attorneys to file this lawsuit. As such, Goforth requests that this Court, under Chapter 38 of the Texas Civil Practices and Remedies Code, award a reasonable fee for services rendered and to be rendered by his attorneys in this matter, both before the district court and any appellate court and the Supreme Court of Texas, if necessary, as well as expenses and court costs.

## XII. Administrative Prerequisites

12.1. Goforth has satisfied all administrative requirements to bringing this cause of action under the ADA, ADEA, and TCHRA.

12.2. Goforth timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and by deferral with the Texas Workforce Commission—Civil Rights Division ("TWC-CRD") on or about February 1, 2016.

12.3. On or about August 18, 2017, the EEOC issued Goforth a Notice of Right to Sue.

12.4. On or about August 25, 2017, the TWC-CRD issued Goforth a Notice of Right to File a Civil Action.

12.5. Goforth has satisfied his administrative requirements under the ADA, ADEA, and TCHRA.

12.6. Goforth timely filed this lawsuit.

### XIII. JURY DEMAND

13.1. Goforth demands a jury on all issues to be tried in this matter.

### PRAYER

WHEREFORE, Plaintiff Gerald Goforth requests that Defendants, The Rand Group, LLC and Rand Group Solutions, LLC, be summoned to appear and that upon final trial he be awarded judgment against Defendants, The Rand Group, LLC and Rand Group Solutions, LLC, jointly and severally, for actual damages, punitive damages, liquidated damages, reinstatement if not found unfeasible, front pay, reasonable attorneys' fees, costs of court, prejudgment and post-judgment interest, and such other and further relief, whether general or special, legal, or equitable, to which he may be justly entitled.

Respectfully submitted,

FIDDLER & ASSOCIATES, P.C.

/s/ G. SCOTT FIDDLER
_____
G. SCOTT FIDDLER
*Attorney-in-Charge*
SBOT #06957750
FID #12508
scott@fiddlerlaw.com
ANDREW W. REED
*Of Counsel*
SBOT #24074935
FID #1140192
areed@fiddlerlaw.com
1004 Congress, 3rd Floor
Houston, Texas 77002
Tel.:    713-228-0070
Fax:    713-228-0078

ATTORNEYS FOR PLAINTIFF